

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

DOLAN, et al.,

                      Plaintiff,

-against-

FIDELITY NATIONAL TITLE INS. CO., et al.,

                      Defendants.
-------------------------------------------------X

**MEMORANDUM AND ORDER**

08-CV-00466 (TCP) (WDW)

PLATT, District Judge.

Before the Court is Defendants' Joint Motion To Dismiss the Consolidated Class Action Complaint with prejudice for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the following reasons, the Defendants' motion is GRANTED.

## BACKGROUND

Plaintiffs, Brendan Dolan, et al. ("Plaintiffs") allege in this class action lawsuit that defendants, Fidelity National Title Insurance Co., et al. ("defendants") participated in an illegal price-fixing conspiracy in violation of the Sherman Act and New York General Business Law § 349 ("GBL § 349"). They argue that the defendants have been unjustly enriched by the setting of artificially high insurance rates. Plaintiffs seek injunctive relief and damages.

The New York State Insurance Department (the "Insurance Department") is the regulatory agency given authority to review and approve title insurance rates in the state of New York. In order for the Insurance Department to complete the task of ensuring reasonable insurance rates, New York law requires that title insurance companies file their rates with the

1

Superintendent of the Insurance Department. N.Y. Ins. Law § 2305(b). New York law further provides that title insurance companies, such as the defendants, may "discharge the rate filing obligation" by using "rates and rate information prepared by a designated rate service organization." N.Y. Ins. Law §2306. Defendants have discharged their rate filing obligation by maintaining membership in the Title Insurance Rate Service Association, Inc. ("TIRSA"), which is also a defendant in this case. TIRSA submits information to the Insurance Department on behalf of the title insurer-members regarding existing insurance rates and also recommends changes to those rates. TIRSA must accompany its rate proposals with "information upon which the insurer supports the rate." N.Y. Ins. Law § 2305(c). The Insurance Department ultimately reviews, approves and sets the rates that it deems reasonable, not "excessive, inadequate or unfairly discriminatory." N.Y. Ins. Law § 2301. Title insurance companies are prohibited from charging any insurance rate unless and until that rate has been filed and approved by the Insurance Department. N.Y. Ins. Law § 2305(b).

TIRSA has made three title insurance rate-increase proposals in the past seventeen years. The first proposal was made in March of 1993. After conducting a comprehensive analysis of the title insurance industry, the Insurance Department denied TIRSA's title insurance base-rate-increase proposal even though the base rate had not changed in nearly a decade. The next time TIRSA requested a revision of the base rates from the Insurance Department was in November of 1995. The Insurance Department approved a base rate increase of 6% after TIRSA reduced the percentage increase that the insurers had originally sought and after TIRSA produced the appropriate information in support of the request. TIRSA's latest rate filing occurred in September of 2001. Once again, the Insurance Department approved the rate increase proposal after TIRSA provided the department with sufficient justification for the increase. TIRSA has

not requested a change in title insurance rates since 2001.

Plaintiffs do not claim that the defendant title insurers charged rates different from those filed with and approved by the Insurance Department. Instead, Plaintiffs allege that the defendants conspired to set unreasonably high title insurance rates for the companies' own excessive gain and, consequently, violated Section 1 of the Sherman Act.

## DISCUSSION

Defendants move for dismissal under Rule 12(b)(6) claiming that the filed rate doctrine precludes Plaintiffs claims. Under the filed rate doctrine, rates filed with a regulatory agency, such as the title insurance rates at issue are "per se reasonable and unassailable in judicial proceedings." *Wegoland, Ltd. v. NYNEX Corp.*, 806 F. Supp. 1112, 1115 (S.D.N.Y. 1992), *aff'd*, 27 F.3d 17 (2d Cir. 1994).

The filed rate doctrine, also known as the filed tariff doctrine, is a principle of federal and state law that recognizes the unsuitability of a court in determining "reasonable" rates, giving deference to regulatory agencies that have been designed by legislatures for the specific purpose of setting uniform rates. *Id.* The Supreme Court of the United States established the doctrine in the case of *Keogh v. Chicago & Northwestern Railway, Co.*, 260 U.S. 156 (1922). In *Keogh*, the Court affirmed the dismissal of a shipper's antitrust claim against interstate freight carriers, even though the carriers were allegedly conspiring to set artificially high tariff rates, because the Interstate Commerce Commission had previously approved the rates as being "reasonable and nondiscriminatory." *Id.* at 162. Under the doctrine, any rates filed with and approved by a regulatory agency are "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland*, 27 F.3d at 18. Application of the doctrine requires only that the rates be

filed with the appropriate regulatory agency. *See Square D Co. v. Niagara Frontier Tarrif Bureau, Inc.*, 476 U.S. 409, 417 (1986). When a regulated entity has filed rates with a federal or state agency, the doctrine bars any claim that challenges the rates as unreasonable or unlawful. *County of Suffolk v. Long Island Power Auth.*, 154 F. Supp. 2d 380, 85 (E.D.N.Y. 2000), *aff'd*, 11 Fed. App. 24 (2d Cir. 2001).

Two policy principles underlie the filed rate doctrine. First, the doctrine serves to ensure that courts do not "substitute [their] judgment as to reasonable rates for that of an agency with specialized knowledge of the area." *County of Suffolk,* 154 F. Supp. 2d at 385. This principle pertains to the "justiciabilty" of determining reasonable rates; the Second Circuit has explained that, "Courts are simply ill-suited to systematically second guess the regulators' decisions . . ." *Wegoland*, 27 F.3d at 21. Secondly, the filed rate doctrine prevents regulated companies from engaging in price discrimination between ratepayers. *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). If courts were able to award damages according to their assessment of reasonable rates, plaintiffs would end up paying different rates than non-suing ratepayers. *See Wegoland*, 27 F.3d at 21. This is the exact price discrimination that the filed rate doctrine seeks to prevent.

Fraud or other unlawful conduct by the defendant does not preclude the application or effect of the filed rate doctrine. *See generally Wegoland*, 27 F.3d at 20. A court does not consider "the culpability of the defendant's conduct or the possibility of inequitable results" when applying the doctrine. *Marcus*, 138 F.3d at 58. For example, Justice Brandeis writing for the Court in the *Keogh* decision, held that even if the Court were to assume that the rate-fixing conspiracy allegations against the defendants were true, the filed rate doctrine would still bar the plaintiff's claim since the tariff rates had been filed with the Interstate Commerce Commission. *See Keogh*, 260 U.S. 156. Similarly, in the case of *Maislin Indus. V. Primary Steel, Inc.*, 497

U.S. 116, 129 (1990), Justice Brenan explained that the Supreme Court has never held that a carrier's "unreasonable practices" justifies preclusion of the filed rate doctrine. The *Wegoland* court reaffirmed the notion that there is no fraud exception to the filed rate doctrine that would save a suit from dismissal. *Wegoland*, 27 F.3d at 20. First, the court explained that allowing an exception for fraud would be incompatible with the line of Supreme Court cases from *Keogh* to *Square D*. *Id*. at 21. Secondly, such an exception would be inconsistent with policy behind the filed rate doctrine; allowing a fraud exception would be the equivalent of a court deciding what rates are reasonable, which, in turn, would "unduly subvert the regulating agencies' authority and thereby undermine the stability of the system." *Id*.

Under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the moving party's favor." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). The Court, however, need not give a presumption of truthfulness to legal conclusions couched as factual allegations. *United States v. Bonanno Organized Crim Family of La Cosa Nostra*, 879 F.2d 20, 27 (2d Cir. 1989). As the Supreme Court recently held, when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1966 (2007).

The title insurance rates filed by Defendant's unquestionably fall under the scope of the filed rate doctrine. The rates at issue were filed with the New York Department of Insurance before being charged. As discussed above, those rates are therefore *per se* reasonable, and therefore cannot be challenged in court. Plaintiffs do not contest that the filed rates were the only rates that Defendants were allowed to charge in New York, and that those rates were

approved by the relevant regulatory agency. Nothing more is required for the filed rate doctrine to apply. *Square D Co. v. Niagra Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1351 (2d Cir. 1985). Even Plaintiffs' conclusory fraud allegations, which are not plead with specificity, do not vitiate the defense permitted by the filed rate doctrine. *Wegoland*, 27 F.3d at 20. The application of the filed rate doctrine is not "determined by the culpability of the defendants conduct or the possibility of inequitable results." *Marcus*, 138 F.3d at 58.

## CONCLUSION

For the reasons specified above, Defendant's motion to dismiss Plaintiffs' claims with prejudice is GRANTED.

SO ORDERED.

Thomas C. Platt, U.S.D.J.

Dated: June 17, 2009
      Central Islip, New York